The People of Puerto Rico, Plaintiff and Appellee, *v.* Francisco Pellicier Marchany, Defendant and Appellant

No. 8140.  Argued May 2, 1940.—Decided May 28, 1940.

*Enrique Báez García* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Francisco Pellicier Marchany was convicted of voluntary manslaughter upon an information charging murder.

■ The first assignment is that the district court erred in permitting the district attorney to ask a physician, who had described a certain wound, whether or not the wounded man could have taken hold of any object. The only authority cited by appellant in this connection is 11 R.C.L. 564, par. 3. From the stenographic record we take the following extract:

"District Attorney:

"Q. Which were the wounds inflicted on the victim treated by you as a surgeon?

"A. The man in question had six wounds.

"Q. What kind of wound was the first one?

"A. One on the forearm.

"Q. Which hand?

"A. On the forearm, on the wrist and on the left hand.

"Q. Explain to the jury the nature of that wound.

"A. I mean the anterior part of the hand and of the wrist, the forearm.

"Q. How big was that wound?

"A. It was a wound so large and so deep that it severed the skin, tendons, vessels, bones, and through to the opposite side.

"Q. With such a wound that went through the hand, could the victim grasp anything, any object?

"Attorney Báez García:. I object to the question.

"District Attorney: Your Honor, he is an expert.

"Attorney Báez García: But the expert is asked for his opinion.

"Judge: He is an expert. If he examined the wound he may tell the result of such wound. Moreover, the defendant admitted the qualifications of the expert.

"Attorney Báez García: We have accepted the expert witness so that he may testify as to the nature of the wounds, but not for his answering hypothetical questions as to whether or not the victim could grasp anything with that hand.

"Judge: The court upholds the question because in its opinion the expert witness who has examined the wound is in a position to describe the condition of the hand, the arm and the forearm.

"Attorney Báez García: We take exception on the ground that the expert can only testify as to the nature of the wounds and not as to the condition of the hand.

"Judge: (To the witness) Answer the question.

"A. After being wounded he could not make use of the hand.

"Attorney Báez García: We move the court to strike out the answer of the witness on the same grounds as the objections.

"Judge: Objection overruled.

"Attorney Báez García: We take exception on the same grounds."

In this we find no error. See Abbott, Criminal Trial Practice, 981, section 529; 2 Warren on Homicide 670, section 216, and Underhill's Criminal Evidence, 454, section 241. In any event—given the facts and circumstances of the instant case—the error, if any, was harmless.

■■ The second assignment is that the district court erred in denying defendant's request that a witness be permitted to describe graphically before the jury the position of defendant, of the witness, the road and the various houses at the time of the event.

The scope and extent of cross-examination is a matter largely within the discretion of the trial judge. A defendant, of course, has the right to test the credibility of a witness for the prosecution and this right must be respected. It can not be so restricted as to prevent a discovery of the truth. All things considered, we find in the instant case no such abuse of discretion as to require a reversal.

Defendant, on direct examination, testified that he had known Manuel Ruiz some six or eight years and that for six months Ruiz had lived in the same house in which defendant and his wife lived. From defendant's testimony on cross-examination we take the following:

"A. This quarrel arose because one night at the time of the Monserrate festivals in Hormigueros...

"Attorney Báez García: I object because that is too remote.

"Judge: Objection sustained.

"District Attorney: I agree."

Beyond this, there was nothing to show where Ruiz took his meals.

█ The district judge, in the course of his charge to the jury, said:

"This is really an unusual case because this defendant is charged with the most serious offense that can be committed in our country, as defined by our penal statutes. In the present case The People of Puerto Rico has produced an eye witness of the facts and the defendant has not produced a single witness in his own defense, except his own testimony, in regard to which I shall instruct the jury later on. So that owing to the special circumstances of the present case the jurors should study it with the greatest interest and study the evidence submitted to them most carefully and make a full analysis of the two theories.

"If the defendant had failed to testify, the court deems it to be its duty to instruct the jurors that nobody would have been able to know the motive for this tragedy. It is not necessary that The People of Puerto Rico should prove the real motive, but the members of the jury always like, for their discussion, to know the reasons for the events that happen in our society. It is not compulsory to say why So and So killed So and So, but it is always a spiritual satisfaction for the judge to find out the motive why So and So inflicted such and injury on So and So. In the present case once the defendant has testified, the gentlemen of the jury already know the motive, if not wholly, in part. These two people, these three people—because the wife also is accused—these three people lived together and it is to be supposed that people living together, partaking of the same bread and salt, must love each other and that there must exist some familiarity between them, because it is unconceivable that three people living under the same roof, partaking together of the same bread and salt, and I think the gentlemen of the jury know that, according to an Arab proverb, persons who have partaken together of bread and salt never hate each other. Such persons as eat and sleep together must have something in common and, really, the fact that the husband, the defendant, murdered with premeditation, express and tacit malice aforethought, the neighbor who was living with him under the same roof, it would have been a great mental torture for the jury to find out the motives for this tragedy, as if the defendant had acted absolutely in the dark. But the defendant has testified and the defendant has undertaken to clear up the motive

for this tragedy and the motive is that Manuel Ruiz was living together with the defendant in the same house, that he came late, and the district attorney suggests also that he may have come under the influence of drink, that his coming so.late at night was a nuisance and that for workers, men tilling the ground, it is very unpleasant to be kept awake, since they very often have to get up early, to have to get up and waste an hour or an hour and a half before they fall asleep again. There had been between them .some quarrels that had started on the previous night; that the owner of the house had cut the threads of the hammock, telling him, we would say, to leave the house where they had lived together.''

This is assigned as error.

If defendant had been convicted of murder, the question here presented might have required a reversal. Since defendant was convicted of manslaughter and thereby acquitted of murder, we are unable to say that the jury was misled or unduly influenced by the charge as given.

■ Appellant's final contention is that the District Court ᵒ erred in not charging the jury concerning the value of the exculpatory statement made by defendant while on the stand. Here appellant relies on *People* v. *Sánchez*, 55 P.R.R. 342. In the absence of any request for a special instruction, we find no reversible error.

The judgment appealed from must be affirmed.